# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:18-cv-20247-Scola/Torres

| | |
|---|---|
| **ESR PERFORMANCE CORP.,** | |
| **Plaintiff,** | |
| **v.** | |
| **JVMAX, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## DEFENDANT JVMAX'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

The following is the Answer of JVMAX, Inc. ("Defendant"), a Florida corporation, to Plaintiff's, ESR Performance Corp., First Amended Complaint for Trademark Infringement, Unfair Competition, Request for Judicial Review of the TTAB Decision and Declaratory Relief.

## NATURE OF ACTION, PARTIES, AND VENUE

1. Defendant admits that Plaintiff has made claims for Trademark Infringement, Unfair Competition, Request for Judicial Review and Declaratory Relief. Defendant denies all other allegations contained in paragraph 1.

2. Denied.

3. Denied.

4. Admitted.

5. Admitted.

6. Admitted.

7. Denied.

8.  Defendant specifically states that Venue is *not* proper in the Southern District of Florida and would affirmatively allege that Plaintiff has agreed to transfer venue to the Middle District of Florida, where Defendant resides.

## **BACKGROUND**

9.  Denied.

10. Without knowledge, therefore Denied.

11. Denied.

12. Admitted.

13. Admitted.

14. Denied.

15. Without knowledge, therefore Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

22. Without knowledge, therefore Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied that JVMAX offers any infringing products for sale.

29. Denied.

30. Denied.

31. Denied.

32. Denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied.

37. Denied.

## PROCEDURAL HISTORY

38. Admitted.

39. Admitted.

40. Denied.

## MISCELLANEOUS

41. Denied.

42. Without knowledge, therefore Denied.

## COUNT I
## TRADEMARK INFRINGEMENT

43. Defendant repeats and realleges its answers set forth above and incorporates them by

reference herein.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Denied.

**COUNT II**
**UNFAIR COMPETITION**

55. Defendant repeats and re-alleges its answers set forth above and incorporates them by

reference herein.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

61. Denied.

62. Denied.

63. Denied.

**COUNT III**
**REQUEST FOR JUDICIAL REVIEW OF THE TTAB DECISION**

64. Defendant repeats and re-alleges its answers set forth above and incorporates them by

reference herein.

65. Admitted that the TTAB issued a final decision in the matter *JVMAX, Inc. v. ESR Performance Corp.*, Cancellation No. 92063873 (TTAB June 29, 2018) granting JVMAX's petition to cancel ESR's Registration No. 4954143 (the *'143 Registration*). Denied as to the remaining allegations.

66. Denied.

67. Denied.

68. Denied.

## COUNT IV
## DECLARATORY JUDGMENT OF AQUIRED DISTINCTIVENESS

69. Defendant repeats and re-alleges its answers set forth above and incorporates them by reference herein.

70. Admitted.

71. Admitted.

72. Denied.

## COUNT IV
## DECLARATORY JUDGMENT OF NO FRAUD ON THE USPTO

73. Defendant repeats and re-alleges its answers set forth above and incorporates them by reference herein.

74. Admitted.

75. Admitted.

76. Denied.

## COUNT V
## DECLARATORY JUDGMENT THAT TRADEMARK IS NOT FUNCTIONAL

77. Defendant repeats and re-alleges its answers set forth above and incorporates them by reference herein.

78. Admitted.

79. Admitted.

80. Denied.

## **PRAYER FOR RELIEF**

Wherefore, Defendant prays the Court will deny Plaintiff all requested relief and award Defendant reasonable attorneys' fees and costs for defending this claim.

## **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**
*Failure to state a claim*

1. Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted.

### **SECOND AFFIRMATIVE DEFENSE**
*Invalidity of the '143 Registration*

2. The '143 Registration is invalid because it is based on an improper claim of acquired distinctiveness under section 2(f).

## **DEFENDANT'S COUNTERCLAIMS FOR CANCELLATION OF FEDERAL TRADEMARK REGISTRATION, UNFAIR COMPETITION AND DECLARATORY RELIEF**

1. Defendant, through its undersigned counsel, asserts the following counterclaims for cancellation of Plaintiff's Federal Trademark Registration, Unfair Competition and Declaratory Relief against Plaintiff ESR Performance Corp. ("Plaintiff") and alleges as follows:

### **NATURE OF ACTION, PARTIES, AND VENUE**

2. The Court has subject matter jurisdiction over Defendant's counterclaims under 28 U.S.C. §1331 as a result of a federal question relating to the United States trademark laws, 15

U.S.C. §1051 et seq.

3.  Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b) and (c), and Plaintiff has agreed to transfer venue to the Middle District of Florida, where Defendant resides.

4.  Defendant is a Florida corporation having its principal place of business in Lake Mary, Seminole County, Florida.

5.  Plaintiff is a Florida corporation having its principal place of business in Miami-Dade County, Florida.

## FACTS COMMON TO ALL COUNTERCLAIMS

6.  Plaintiff filed a Federal Trademark Application for trade dress consisting of the product design as now shown in the '143 Registration (the "Registered Design") on April 23, 2015. The Federal Trademark Application was assigned Application Serial Number 86/608,054 ("the '054 Application").

7.  The Examining Attorney assigned to the '054 Application issued a Non-Final Office Action on August 11, 2015 refusing registration because the Registered Design consists of a non-distinctive product design that is not registrable on the Principal Register without sufficient proof of acquired distinctiveness. The basis for the refusal was that a product design can never be inherently distinctive as a matter of law.

8.  Plaintiff filed a response to the refusal on November 11, 2015 (the "November 11, 2015 Response") including evidence purporting to address the "(1) the length and exclusivity of use of the mark in the United States by applicant; (2) the type, expense, and amount of advertising of the mark in the United States; and (3) applicant's efforts in the United States to associate the mark with the source of the goods, such as in unsolicited media coverage

and consumer studies."

9. The November 11, 2015 Response included a sworn declaration of Mr. Enrique Baiz, President of Plaintiff, signed by Mr. Baiz on November 10, 2015. Mr. Baiz's sworn declaration states that the Registered Design has become distinctive of Plaintiff's goods of automobile antennas based upon sales of over $36,000 and a purported investment of over $3,000 in advertising during the years of 2014 and 2015. Mr. Baiz's sworn declaration also stated: "Competitors have a number of different designs to use for competitive Goods."

10. The Examining Attorney assigned to the '054 Application again refused registration of the design mark and issued a Non-Final Office Action on December 01, 2015 (the "December 01, 2015 Office Action"), stating that the evidence submitted by Plaintiff was insufficient to support a Section 2(f) Claim of Acquired Distinctiveness.

11. On December 30, 2015, Plaintiff filed a response to the December 01, 2015 Office Action (the "December 30, 2015 Response") amending the basis for its Section 2(f) Claim of Acquired Distinctiveness to include a claim of five or more years of substantially exclusive and continuous use of the Registered Design in commerce. This response included a second sworn declaration from Mr. Baiz, adding an additional product design purported to be covered by the Registered Design, referenced by Plaintiff as the 3-inch design or the "223 cal caliber" design.

12. The December 30, 2015 Response argued that its claim that the Registered Design had become distinctive of Plaintiff's goods of automobile antennas was supported by its submissions allegedly touching on "(1) the length and exclusivity of use of the mark in the United States by applicant; (2) the type, expense, and amount of advertising of the mark in

the United States; and (3) applicant's efforts in the United States to associate the mark with the source of the goods, such as in unsolicited media coverage and consumer studies."

13. The December 30, 2015 Response also amended the claimed first date of use and first date of use anywhere from February 13, 2015 to November 03, 2010.

14. In the sworn declaration, Plaintiff amended the report of sales to add over $472,900 from the alternative design, and changed the purported investment in advertising from over $3,000 to over $203,000 "in advertising and promoting its 3 inch and 6 inch Cartridge-Shaped Automobile Antennas" (the "Advertising Claim").

15. Plaintiff sells almost 4,000 different products.

16. Plaintiff admitted that the Advertising Claim included all advertising money spent by Plaintiff for its entire business, including advertising for all of its nearly 4,000 distinct products. The Advertising Claim also included the listing fees for Plaintiff's Goods and commissions paid to sales people for listing and selling Plaintiff's Goods.

17. The second declaration by Mr. Baiz stated: "Competitors have a number of different designs to use for competitive Goods." The second declaration of Mr. Baiz includes statements from consumers commenting on the ornamental appearance of Plaintiff's Goods stating "I like the way it looks …" and "[I] love the way it looks."

18. The only evidence produced during prosecution of the '054 Application by Plaintiff to support its claim of the amount of sales of 50 caliber bullet-shaped antennas consists of Mr. Baiz's declaration.

19. The only evidence produced by Plaintiff during prosecution of the '054 Application to support its claim of advertisement of all bullet shaped antennas consists of six screenshots from Plaintiff's product listings on Amazon, fifty-four declarations from alleged customers

of Plaintiff, and three pages from Plaintiff's product catalog. The only evidence produced by Plaintiff to support its claim of the amount of sales of all bullet shaped antennas consists of Mr. Baiz's declaration.

20. Like Plaintiff, Defendant is a seller of automobile antennas, and is thus a competitor of Plaintiff.

21. Defendant and many other competitors of Plaintiff sold automobile antennas in a product design that was the same, or nearly identical, to the Registered Design prior to the registration date of the '143 Registration and prior to the claim of acquired distinctiveness in the December 30, 2015 Response.

22. Because Plaintiff's claim of acquired distinctiveness was made on December 30, 2015, that claim of acquired distinctiveness must be evaluated as of that date.

23. Upon information and belief, at least one competitor, DLT, LLC dba CravenSpeed ("CravenSpeed"), used the Registered Design as its product design prior to use by Plaintiff and throughout the entirety of the period for which Plaintiff claims substantially exclusive use.

24. Plaintiff has personal knowledge of and is aware of the following list of third-party competitors of Plaintiff which have sold goods utilizing Plaintiff's Registered Design as their product design: Cravenspeed; Metra Electronics Corporation; AntennaMastrus; Wang; various eBay sellers, specifically, us.wan9, parts-pros, carid, supremeracing, champions_on_display, riverviewtrader, mygoods, japav2013, sherco_auto, riverviewtrader, carxxx, jsalarm, gtautohause, ledinfinity, premiumled, 2012 aotomotshop, designyourchannel, milykelli, ca.th67, shine-web, rainbowhong 2012, bridgewood_motorsports, bigmore705, magicpowerusa, wincent2016, 2014 thxues,

bangfour, baobagth, beachaudio, candsavings, mygoods, texdealz, ecop!, esieshop, icfuture, poppula, speedysales715, akasil6, buyaparts, baostoner16, ceshowroom, hot_mall, pothole65ron, pumpt24, and guoquk2015; various Amazon sellers, specifically, Parts-pros, biddeal_co, ShopChanute, FX Car Audio OKS, GizmosForLife, eCop!, CE Showroom, Foundry35, Beach Audio, IPC-Store, caraudiodistributors, and US Auto.

25. Defendant began selling the Registered Design as its product design around September of 2015.

26. From the time period of September 2015 to May 2016, Defendant sold 6,310 units of the Registered Design as its product design in the shape of a ".50-cal.", also known as a 5-inch bullet.

27. The .50-cal antenna sold by Defendant resembles a .50-caliber bullet for a .50-caliber gun.

28. From the time period of September 2015 to May 2016, Defendant had gross sales of $190,881 for its product design in the shape of a ".50-cal.".

29. On average, Defendant sold 631 units per month of its product design in the shape of a ".50-cal." from the time period of September 2015 to May 2016.

30. On average, Defendant had gross sales of $19,088 per month for its product design in the shape of a .50-cal. bullet.

31. From the time period of September 2015 to May 2016, Defendant sold 7,289 units of its product design for all bullet shapes, specifically, .50-cal., .30-cal., and .223-cal., also known as a 3-inch bullet.

32. From the time period of September 2015 to May 2016, Defendant had gross sales of $213,021 for its product design for all bullet shapes.

33. In May of 2016 alone, Defendant had 300 advertisements running for its product design for

all bullet shapes.

34. In 2015 alone, Defendant spent $25,449.53 on advertising on Amazon.com for the Registered Design as its product design for all bullet shapes.

35. Upon information and belief, CravenSpeed first sold products with the product design of a bullet shape more than 3 years before both the first date of use anywhere and the first date of use in commerce claimed in the '143 Registration.

36. Upon information and belief, on October 15, 2013, CravenSpeed first sold an automobile antenna bearing the product design of a .50 caliber bullet shape, namely, Plaintiff's Registered Design.

37. Upon information and belief, from the time period of 2007 to July 2017, CravenSpeed spent a substantial amount on advertising for and had a substantial number of sale of antennas bearing the product design of a bullet shape.

38. Plaintiff purchased an automobile antenna consisting of the product design of the Registered Design from its competitor CravenSpeed on or about December 30, 2013.

39. Plaintiff purchased an antenna in the shape of a .50-caliber bullet from its competitor CravenSpeed before it sold an antenna in the shape of a .50 caliber bullet.

40. Upon information and belief, Metra Electronics Corporation (hereinafter "Metra") sold Plaintiff's Registered Design prior to Plaintiff's claim of acquired distinctiveness on December 30, 2015.

41. Metra has sold three different shape variants of antennas bearing the product designs consisting of bullet shapes. The three different shape variants are as follows: "7.62 caliber version"; "30 caliber version"; and "50 caliber version".

42. Upon information and belief, from the time period of 2015 to July 2017, Metra spent a

substantial amount on advertising for and had a substantial number of sale of antennas bearing the product design of a bullet shape.

43. Throughout the automobile industry, Plaintiff's Registered Design as a product design is advertised as specific bullet calibers. For example, "50cal", "50caliber", ".50 cal" and ".50 caliber" are used in advertisements for the Registered Design as a product design wherein the shape of the Registered Design replicates that of a .50-caliber bullet.

44. Plaintiff advertises its Registered Design as a product design using the following terms and designations: "50 Cal Bullet Style"; "50 Cal Style"; ".50-Caliber Bullet-Style"; "50 Caliber Bullet Style"; and "50 Cal Caliber".

45. Plaintiff advertises its other antennas bearing the product design of bullet shapes other than the .50-caliber bullet shape using the name of the bullet shape being replicated, specifically, Plaintiff uses the following terms and designations: "223 caliber" and "223 Style".

46. Plaintiff utilizes social media advertising that emphasizes the ornamental appearance of its antennas bearing the Registered Design.

47. Plaintiff advertises its antennas differently based on the size and shape of the antenna as it relates to different types of real bullets.

48. Plaintiff also utilizes hashtags to place its advertisements in front of people who are interested in guns.

49. People interested in guns and bullets are the class of consumers to whom products bearing the Registered Design are marketed.

50. Throughout a variety of industries bullet shapes, including .50-caliber bullet shapes, are common ornamental replacements for objects of cylindrical shape.

51.  Consumers are thus accustomed to bullet shapes, such as .50-caliber bullet shapes, as ornamental replacements for objects of cylindrical shape.

52.  Automobile antennas are generally of cylindrical shape.

53.  Plaintiff's goods under the Registered Design are "Automobile antennas" in International Classification 009.

54.  Plaintiff is aware and has affirmatively stated that its Registered Design consists of the generic shape of a .50-caliber bullet.

55.  A non-exhaustive list of products for which the shape of a .50-caliber bullet is used as an ornamental design includes: automobile transmission shifters, automobile valve stem caps, automobile door lock knobs, automobile license plate bolts, motorcycle tail lights, motorcycle seat bolts, bottle openers, pens, flashlights, shot glasses, key rings, chess pieces, butane lighters, jewelry, lipstick holders, folding knives, silverware (cutlery), whiskey chillers, cigar cases, corkscrews, keg handles, stylus, billiard chalk holders, light pulls, ear plugs, cane handles, tongs, USB flash drives, urns, vape pens, double wall drinking vessels, pipes, laser pointers, beverage holders and chillers, and toilet paper holders.

56.  Plaintiff never marked the Registered Design as trademark prior to the issue date of the '143 Registration.

57.  Prior to filing the '054 Application, Plaintiff never notified any member of the public that it intended the Registered Design to designate the source of the goods bearing the Registered Design.

58.  Prior to filing the '054 Application, Plaintiff never notified any member of the public that it considered the Registered Design to be a trademark.

59. Other than filing and prosecuting the '054 Application, Plaintiff never notified any member of the public that it intended the Registered Design to designate the source of the goods bearing the Registered Design prior to the issue date of the '143 Registration.

60. Other than filing and prosecuting the '054 Application, Plaintiff never notified any member of the public that it considered the Registered Design to be a trademark prior to the issue date of the '143 Registration.

61. On or about June 14, 2016, Defendant filed a Petition for Cancellation against the '143 Registration with the Trademark Trial and Appeal Board (the "TTAB").

62. The TTAB instituted Cancellation Proceeding No. 92063873 based upon Defendant's Petition for Cancellation against the '143 Registration.

63. After the completion of over a year and a half of discovery, trial testimony, and briefing, the TTAB granted Defendant's Petition for Cancellation against the '143 Registration.

64. On June 29, 2018, the TTAB ordered that the '143 Registration be cancelled.

**FIRST COUNTERCLAIM**
*Cancellation of Federal Trademark Registration No. 4,954,143 for*
*Lack of Acquired Distinctiveness*

65. Defendant repeats and re-alleges paragraphs 1-64 and incorporates them by reference herein.

66. Plaintiff's Registered Design is a 3-dimensional product design of an automobile antenna that is shaped like a bullet cartridge.

67. Plaintiff 's Registered Design constitutes a product design and is required to have secondary meaning sufficient to have acquired distinctiveness.

68. Plaintiff is not and never has been the exclusive user of its Registered Design.

69. Plaintiff is not and never has been the substantially exclusive user of its Registered Design.

70.    Plaintiff is not the first user of the Registered Design.

71.    Market competitor, CravenSpeed, used the Registered Design prior to Plaintiff's first use of the Registered Design.

72.    Market competitor, CravenSpeed, first used the Registered Design as its product design for an antenna more than three years before Plaintiff first used the Registered Design as its product design for an antenna.

73.    Plaintiff has spent only a nominal amount on advertising of its Registered Design.

74.    Plaintiff has made little to no effort to associate the Registered Design with the source of its goods in the United States.

75.    The Registered Design cannot serve as an indicator of a single source of products bearing the product design based on the third-party usage of the Mark.

76.    Therefore, Plaintiff cannot demonstrate it has acquired distinctiveness in the Registered Mark, and the '143 Registration should be cancelled pursuant to Lanham Act §37, 15 U.S.C. §1119.

## SECOND COUNTERCLAIM
*Cancellation of Federal Trademark Registration No. 4,954,143 for Fraud on the USPTO*

77.    Defendant repeats and re-alleges paragraphs 1-64 and incorporates them by reference herein.

78.    Fraud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with his application.

79.    Plaintiff initially listed the First Use Anywhere Date and the First Use in Commerce Date on the '054 Application as February 13, 2015.

80.    It was not until after the December 01, 2015 Office Action was issued, including a Refusal based on "insufficient evidence to support a §2(f) claim", that Respondent amended its

First Use Anywhere Date and the First Use in Commerce Date on the '054 Application to November 03, 2010 in order to meet the requirement of "substantially exclusive and continuous use" of a trademark "by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made" in its Response to the December 01, 2015 Office Action.

81. At the time Plaintiff made its claim of acquired distinctiveness, Plaintiff was aware of the use of its Registered Design, or similar designs, by Defendant and other previously identified third parties during the five-year period preceding Plaintiff's Section 2(f) claim of acquired distinctiveness.

82. Plaintiff, with its claimed "substantial" commercial success, knew or should have known at the time of making its sworn statement of Section 2(f) claim of acquired distinctiveness based on Five or More Years' Use for the '054 Application, that Plaintiff did not have the requisite five years of substantial, exclusive and continuous use of the mark identified in said '054 Application in commerce in the United States.

83. Plaintiff knowingly made a false statement as to its substantially exclusive and continuous use of the mark identified in the '054 Application in commerce in the United States for the five years immediately before the date of said sworn statement and during Plaintiff's application process for the Registered Design.

84. Plaintiff knew the USPTO would rely on Plaintiff's false statements of substantially exclusive and continuous use of the mark identified in the '054 Application in commerce in the United States for at least the five years immediately before the date of said sworn statement in granting Plaintiff's '143 Registration.

85. The USPTO did in fact rely on Plaintiff's false statements when it granted Plaintiff's '143

Registration.

86. If it was not for Plaintiff's false statements of substantially exclusive and continuous use of the mark identified in the '054 Application, Plaintiff's '143 Registration would have been Denied.

## THIRD COUNTERCLAIM
*Cancellation of Federal Trademark Registration No. 4,954,143 for*
*Aesthetic Functionality*

87. Defendant repeats and re-alleges paragraphs 1-64 and incorporates them by reference herein.

88. The product design of the bullet shape as shown in Plaintiff's Registered Design is essential to the purpose of the product – to look like a bullet shaped antenna.

89. The look of the automobile antenna is a competitive feature not related to the source of the goods.

90. The product design of the bullet shaped antenna is purchased in large part for the way it looks to consumers desiring to purchase automobile antennas of a certain shape – a bullet.

91. If Plaintiff were permitted to continue to maintain exclusive use of its Registered Design, Plaintiff's competitors would be at a significant non-reputation-related disadvantage.

92. Consequently, the Registered Design is aesthetically functional and the '143 Registration should be cancelled pursuant to Lanham Act §37, 15 U.S.C. §1119.

## FOURTH COUNTERCLAIM
*Declaratory Judgment of Invalidity*

93. Defendant repeats and re-alleges all previous paragraphs and incorporates them by reference herein.

94. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of

invalidity.

95. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights regarding the validity of Plaintiff's '143 Registration.

96. Defendant is entitled to a declaratory judgment that Plaintiff's '143 Registered Design is invalid under one or more provisions of the Lanham Act.

## FIFTH COUNTERCLAIM
*Declaratory Judgment of Non-Infringement*

97. Defendant repeats and re-alleges all previous paragraphs and incorporates them by reference herein.

98. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement.

99. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights regarding its products and Plaintiff's '143 Registered Design.

100. Defendant is entitled to a declaratory judgment that Defendant has not infringed and does not infringe, either directly or indirectly, any valid and enforceable rights Plaintiff may have in the Registered Design.

## SIXTH COUNTERCLAIM
*Unfair Competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

101. Defendant repeats and re-alleges all previous paragraphs and incorporates them by reference herein.

102. Plaintiff does not have exclusive rights to its Registered Design.

103. Plaintiff knew or should have known that it did not have exclusive rights to its Registered Design.

104. Plaintiff's claim of exclusive use and entitlement to exclusive use along with its active exclusion of Defendant in the marketplace is deceptive and unfair to Plaintiff's competitors.

105. Defendant has been damaged by Plaintiff's active and ongoing wrongful exclusion of Defendant in the marketplace.

## SEVENTH COUNTERCLAIM
*Unfair Competition under the Florida Deceptive and Unfair Trade Practices Act*

106. Defendant repeats and re-alleges all previous paragraphs and incorporates them by reference herein.

107. Plaintiff is *not* the first user of the Registered Design.

108. Plaintiff does *not* have exclusive rights to the Registered Design.

109. Plaintiff knew or should have known that it did not have exclusive rights to the Registered Design.

110. Plaintiff's claim of first use, exclusive use and entitlement to exclusive use along with its active exclusion of Defendant in the marketplace is deceptive and unfair to Defendant.

111. Defendant has been damaged by Plaintiff's active and ongoing wrongful exclusion of Defendant in the marketplace.

## EIGHTH COUNTERCLAIM
*Cancellation of Plaintiff's Pending Trademark Applications for its "BULLET",*
*"50 CALIBER", "50 CAL", "BULLETS", and "AMMO" Standard Character Marks*

112. Defendant repeats and re-alleges all previous paragraphs and incorporates them by reference herein.

113. On November 6, 2017, Plaintiff filed applications for the following word marks: "BULLET" (Serial No. 87673495); "50 CALIBER" (Serial No. 87673487); "50 CAL" (Serial No. 87673474); and "BULLETS" (Serial No. 87673452). On November 5, 2017,

Plaintiff filed an application for the word mark "AMMO" (Serial No. 87672435).

114. The terms "BULLET", "50 CALIBER", "50 CAL", "BULLETS", and "AMMO" (collectively the "Related Terms") are used to describe the antennas bearing the Registered Design.

115. The Related Terms are included in the advertising of antennas bearing the Registered Design.

116. Each advertisement of the antennas bearing the Registered Design include at least one of the Related Terms.

117. The Related Terms are closely related to the Registered Design.

118. Each of the Related Terms represents a hashtag that Plaintiff uses to advertise the Registered Design.

119. The Related Terms are merely descriptive of antennas bearing the Registered Design.

120. The term "BULLET" is even included in the description of the Registered Design in the '143 Registration, which states that it is a 3-dimensional product design of an automobile antenna that is shaped like a bullet cartridge.

121. Plaintiff is not and never has been the exclusive user of the Related Terms.

122. Plaintiff is not and never has been the substantially exclusive user of its Related Terms.

123. Defendant and Plaintiff's other competitors use the Related Terms in connection with antennas bearing the Registered Design.

124. Plaintiff has made little to no effort to associate the Related Terms with the source of its goods in the United States.

125. The Related Terms cannot serve as an indicator of a single source of products bearing the product design based on the third-party usage of the Related Terms.

126. Therefore, Plaintiff cannot demonstrate it has acquired distinctiveness in the Related Terms, and the trademark applications for the Related Terms should be cancelled or abandoned.

### NINTH COUNTERCLAIM
*Declaratory Judgment of Non-Infringement*

127. Defendant repeats and re-alleges all previous paragraphs and incorporates them by reference herein.

128. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment of non-infringement of the Related Terms.

129. A judicial declaration is necessary and appropriate so that Defendant may ascertain its rights regarding its products and Plaintiff's claim of trademark rights in the Related Terms.

130. Defendant is entitled to a declaratory judgment that Defendant has not infringed and does not infringe, either directly or indirectly, any valid and enforceable rights Plaintiff may have in the Related Terms.

### TENTH COUNTERCLAIM
*Tortious Interference with a Business Relationship - Florida Common Law*

131. Defendant repeats and re-alleges paragraphs 1-64 and incorporates them by reference herein.

132. Defendant had business relationships with Amazon.com, Inc. ("Amazon") and eBay, Inc. ("eBay") wherein Amazon and eBay provided an online platform for Defendant to offer for sale and sell its goods through online listings.

133. Plaintiff contacted Amazon and eBay to request the removal of Defendant's antennas exhibiting a similar or identical design to the Registered Design.

134. Plaintiff knew of Defendant's business relationships with Amazon and eBay.

135. Plaintiff intentionally interfered with the business relationships by actively contacting Amazon and eBay to request removal of Defendant's online listings.

136. Plaintiff knew or should have known that it received the '143 Registration through Fraud on the USPTO.

137. Plaintiff knew or should have known that the Registered Design did not have acquired distinctiveness.

138. Plaintiff knew or should have known that the Registered Design is aesthetically functional.

139. Plaintiff knew or should have known that the '143 Registration was not valid.

140. Plaintiff knew or should have known that the '143 Registration was not enforceable.

141. Plaintiff nevertheless asserted the '143 Registration against Defendant's online listings and caused the online listings to be removed.

142. Plaintiff knew or should have known that its request for removal of Defendant's online listings would cause a negative notation to be made against Defendant's accounts with Amazon and eBay.

143. Plaintiff was unjustified in interfering with Defendant's relationships with Amazon and eBay because Plaintiff asserted the '143 Registration, knowing it was acquired through fraud, invalid, and unenforceable.

144. Defendant suffered lost profits and sales as result of the removal of its online listing from Amazon and eBay's online platforms.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for judgment in its favor and against Plaintiff as follows:

1. Cancellation of Federal Trademark Registration No. 4,954,143 for Lack of Acquired Distinctiveness;

2. Cancellation of Federal Trademark Registration No. 4,954,143 for Fraud on the USPTO;

3. Cancellation of Federal Trademark Registration No. 4,954,143 for Aesthetic Functionality;

4. A declaratory judgment that Plaintiff's Federal Trademark Registration No. 4,954,143 is invalid;

5. A declaratory judgment of non-infringement by Defendant;

6. Damages for Plaintiff's Unfair Competition under the Lanham Act;

7. Damages for Plaintiff's Unfair Competition under the Florida Deceptive and Unfair Trade Practices Act;

8. Cancellation of Plaintiff's pending trademark applications for its "BULLET", "50 CALIBER", "50 CAL", "BULLETS" and "AMMO" standard character marks;

9. Damages for Plaintiff's Tortious Interference with a Business Relationship;

10. An injunction barring Plaintiff from asserting against Defendant any claim of rights in the Registered Design or the Related Terms;

11. An award of the costs and reasonable attorneys' fees incurred by Defendant in connection with this action;

12. An award of such other and further relief as the Court may deem just and proper; and

13. A trial by jury on all issues triable by a jury.

Dated: September 13, 2018

Respectfully Submitted,

/s/William R. Brees
Brittany J. Maxey-Fisher, Esquire (Fla. Bar No. 44586)
William R. Brees, Esquire (Fla. Bar No. 98886)
MAXEY-FISHER, PLLC
100 Second Avenue South, Suite 401 North
St. Petersburg, Florida 33701
Telephone: (727) 230-4949
Facsimile: (727) 230-4827
Email:  lpg@maxeyfisher.com
            wbrees@maxeyfisher.com
            bmaxeyfisher@maxeyfisher.com

*Counsel for Defendant JVMAX, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of September, 2018, a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court using the CM/ECF filing system, which will send a notice of electronic filing to all counsel of record.

/s/ William R. Brees
Brittany J. Maxey-Fisher, Esquire
William R. Brees, Esquire
MAXEY-FISHER, PLLC
100 Second Avenue South, Suite 401 North
St. Petersburg, Florida 33701
Telephone: (727) 230-4949
Facsimile: (727) 230-4827
Email:  lpg@maxeyfisher.com
            wbrees@maxeyfisher.com
            bmaxeyfisher@maxeyfisher.com

*Counsel for Defendant JVMAX, Inc.*